UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY<br>& SURETY COMPANY OF AMERICA,<br>as assignee and subrogee of Katy<br>Industries, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. |

## COMPLAINT

**COMES NOW** the Plaintiff, Travelers Casualty and Surety Company of America ("Travelers"), by and through the undersigned counsel, and files this Complaint against Defendant Bank of America, N.A. ("Bank of America"). In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1). There is complete diversity between the Plaintiff and the Defendant, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in this District pursuant to 28 U.S.C. §1391. Some of the acts that give rise to Plaintiff's claims occurred in this District. The bank account at issue in this case is located in this District.

## THE PARTIES

3. Plaintiff Travelers is a stock insurance company organized and existing under the laws of the State of Connecticut, having its principal place of business in Hartford, Connecticut.

4. Defendant Bank of America, N.A., is a bank organized and existing under the banking laws of the United States of America, with its principal place of business in Charlotte, North Carolina. Bank of America does substantial business in the State of Illinois.

## BACKGROUND FACTS

5. Plaintiff Travelers is the fidelity insurer of Katy Industries, Inc. and its subsidiary, Contico (collectively known as "Katy").

6. Katy Industries, Inc. is a manufacturer and distributor of commercial cleaning products sold primarily to janitorial/sanitary and food service distributors.

7. At all times relevant herein, Katy's principal place of business is in Bridgeton, Missouri.

8. LaSalle Bank Corporation was the holding company for LaSalle Bank N.A. and LaSalle Bank Midwest N.A. (collectively known as "LaSalle"). LaSalle was headquartered in Chicago, Illinois.

9. LaSalle was acquired by Bank of America on October 1, 2007 and officially adopted the Bank of America name on May 5, 2008 (collectively known as "Bank of America").

10. During the times relevant to this Complaint, Katy maintained one or more bank accounts at LaSalle, and then Bank of America following its acquisition of LaSalle (the "Accounts").

11. At all times relevant herein, LaSalle and then Bank of America provided funds

transfer services to Katy from the Accounts *via* the Automated Clearinghouse ("ACH")[1] system through which Katy paid employees, commissions, rent, and a few vendors.

12. Bank of America holds itself out as a recognized industry leader in ACH processing, offering efficient, accurate and secure ACH services to its customers like Katy.

13. Bank of America would administer and process the requests and transfer funds *via* the ACH system from the Accounts to bank accounts maintained by intended recipients.

14. Bank of America's ACH online service operated under the name CashPro™ Online.

15. Bank of America's ACH service had an established procedure to help secure against fraudulent and/or unauthorized ACH transactions. A system of security IDs and passwords was established for use of online ACH services. Additionally, after each batch submission, a fax confirmation was sent to its customer. This fax was used by the customer to verify the ACH transactions' authenticity.

16. Upon information and belief, Bank of America charged an additional fee to Katy for all services related to administering and processing all fund transfer requests *via* the ACH system.

17. On December 9, 2008, at 10:48a.m., Peggy Foley, a senior accountant with Katy whose responsibilities included managing Katy's ACH transactions, received an email purporting to be from Bank of America. The subject of this email was "Bank of America – The demo is best viewed with your browser". The email purported to be regarding a new online banking account interface from Bank of America.

18. A couple of hours later, at 12:49p.m., Ms. Foley again received an email purporting to

---

[1] The ACH is a payment transfer system that connects all U.S. financial institutions. The ACH network acts as the central clearing facility for all electronic fund transfer transactions that

3

be from Bank of America with the subject of "Bank of America – register for a Demo Account to use new features."

20. 19. At 2:12p.m., Ms. Foley, concerned with the authenticity of the emails referenced in paragraphs 17 and 18, forwarded the 12:49p.m. email to Kim Wolfe, an assistant Vice President at Bank of America, asking Ms. Wolfe to verify its legitimacy Thus, Bank of America was on notice of the suspicious e-mail but, upon information and belief, failed to act to investigate the suspicious e-mail.

20. Still later that same day, numerous Katy employees received another email purporting to be from Bank of America with the subject line of "Bank of America – Demo Account Set Up". These emails, along with the emails referenced in paragraphs 17 and 18, shall be collectively referred to as "Questionable Emails".

21. Upon information and belief, on or by December 9, 2008, Bank of America knew or should have known of the illegal phishing scam attempting to obtain its customers' confidential information which would allow access to their accounts. In the field of computer security, phishing is the criminally fraudulent process of attempting to acquire sensitive information such as usernames, passwords and credit card details by masquerading as a trustworthy entity in an electronic communication. This phishing scam was using emails, such as the emails Katy received, to illegally obtain the means to access Bank of America's customers' accounts. The illegal phishing scam had been identified as such by at least two different online security websites as early as 3:41 pm on December 9, 2008.

22. Upon information and belief, Bank of America did not notify any of its customers,

---

occur nationwide.

4

including Katy, of this illegal phishing scam and did not utilize its own internal communications to direct its own personnel to be on the alert for complaints from customers like Katy of unauthorized ACH activity.

23. Upon information and belief, despite having actual notice of the phishing scam, Bank of America did not take any action to aid customers in proactively dealing with the effects of the phishing scam or even to notify its customers of the scam.

24. On December 10, 2009, Ms. Foley again contacted Ms. Wolfe regarding the Questionable Emails. Ms. Wolfe finally responded but only suggested Ms. Foley send the Questionable E-mails to the email fraud department at Bank of America. Ms. Foley forwarded one of the Questionable Emails to Bank of America's email abuse service at abuse@bankofamerica.com. However, she received no response whatsoever from Bank of America.

25. Several other Katy employees received more emails purporting to be from Bank of America throughout December 10, 2009. Again these emails purported to have a "demo" of a new Bank of America service. Henceforth, these emails will be included in the emails referenced by the term "Questionable Emails".

26. On December 11, 2008, at 3:18p.m., Katy received a fax confirmation ("Fax Confirmation"), pursuant to procedure, of two ACH batches.[2] The Fax Confirmation gave an effective date of December 12, 2008. The ACH batch totals were for $326,223.00 and $123,170.00 respectively. These transactions were fraudulent.

27. Katy immediately recognized that the transactions were fraudulent as they had not submitted any ACH transactions on that day.

---

2 ACH transactions are sent in a group known as a Batch.

28.     Once Katy was able to access its accounts via CashPro™, it was determined that the two batches contained fraudulent transactions to 42 different receivers totaling $449,393.00. ("Fraudulent Batches").

29.     At 3:30p.m., twelve (12) minutes after receiving the Fax Confirmation, Ms. Foley contacted Bank of America CashPro™ help desk and explained that the Fraudulent Batches had not been sent by Katy and were fraudulent. Ms. Foley was informed that the Fraudulent Batches could not be located by the CashPro™ help desk and was asked to call back on December 12th in the morning. Bank of America did not provide Ms. Foley with the ACH Reversal/Deletion Request Form for the Fraudulent Batches at this time despite having actual notice that the transactions were fraudulent and should be deleted.

30.     Katy continued to try to correct and cancel the Fraudulent Batches on December 11, 2008. At 4:20p.m., Diane Seers of Katy emailed Scott A. Gordon, a Senior Vice President with Bank of America's Global Product Solutions department. Ms. Seers explained that the attempts to cancel the Fraudulent Batches had, so far, been unsuccessful and requested prompt attention to prevent the transactions in the Fraudulent Batches from being completed.

31.     At 4:40 p.m. on December 11, Mr. Gordon sent an email to several other employees of Bank of America requesting they "determine the immediate next steps to delete/abort these files for the benefit of Katy."

32.     Despite Katy's continued efforts on December 11, the full amount of the Fraudulent Batches was deducted from Katy's account on December 12, 2008.

33.     Immediately upon seeing that the Fraudulent Batches still appeared on Katy's account, Ms. Foley again contacted Bank of America to attempt to stop/reverse these transactions.

34.     Ms. Foley was instructed by Bank of America to complete an ACH Reversal/Deletion Request form.  At 8:30a.m. on December 12, 2008, Ms. Foley faxed the completed ACH Reversal/Deletion form to Bank of America.

35.     From December 12, 2008 through December 17, 2008 several ACH batches appeared in Katy's CashPro™ Account reporting both debits and credits related to the Fraudulent Batches. The total wrongfully charged to Katy for the Fraudulent Batches at the completion of the debiting and crediting by Bank of America was $235,045.00.

36.     Katy filed a claim with Travelers under a Travelers' fidelity policy.  Following the execution of a Release and Assignment between Travelers and Katy, Travelers paid Katy's claim for the covered loss relating to the Accounts.

37.     Under the terms of the Release and Assignment, Travelers was assigned all of Katy's rights and claims against any person or organization responsible for the full loss.  Travelers is also subrogated to such rights.

38.     All conditions precedent to this action, if any, have been fulfilled and this action is timely filed.

## COUNT ONE
### (Violation of 810 ILCS §5/4A-201 and §5/4A-202)

39.     Plaintiff hereby re-alleges and incorporates by reference all those allegations contained in paragraphs 1-38 inclusive.

40.     Katy and Bank of America had an established procedure to verify the authenticity of ACH payment transactions.  Included within that procedure was a fax confirmation that was sent Katy after an ACH batch was submitted but prior to the execution of any payment order.

41.     The established security procedure was not commercially reasonable.

42. Notwithstanding whether the security procedure was commercially reasonable, Bank of America failed to comply with the security procedure.

43. Immediately upon receiving the Fax Confirmation, Katy informed Bank of America through multiple methods that the Fraudulent Batches were indeed fraudulent.

44. Bank of America failed to act upon this notice of Katy in compliance with their obligations pursuant to the security procedure. Consequently, the payments orders contained in the Fraudulent Batches were not accepted in good faith or in compliance with the agreed upon security procedure.

45. As a direct and proximate result of the aforesaid failure to act by Bank of America, Bank of America caused damage to Katy and Travelers.

## COUNT TWO
**(Violation of 810 ILCS §5/4A-211)**

46. Plaintiff hereby re-alleges and incorporates by reference all those allegations contained in paragraphs 1-38 inclusive.

47. Immediately upon receiving the Fax Confirmation, Katy communicated to Bank of America its intent to cancel the Fraudulent Batches.

48. At the time that Katy communicated the cancellation, Bank of America had not yet accepted the payment order pursuant to 810 ILCS §5/4A-209.

49. Katy's notice was in compliance with the agreed upon security procedure. Alternatively, Bank of America agreed to the cancellation through its authorized representative.

50. As the cancellation was received prior to acceptance, Bank of America was required to effectuate the cancellation.

51. Further, Katy's cancellation was effective as to the Fraudulent Batches because the

cancellation notice was received at a time and in a manner which affording Bank of America a reasonable opportunity to act.

52. However, Bank of America failed to act reasonably upon Katy's cancellation notice and failed to cancel many of the transactions in the Fraudulent Batches.

53. As a direct and proximate result of the aforesaid failure to act by Bank of America, Bank of America caused damage to Katy and Travelers.

## COUNT THREE
**(Negligence)**

54. Plaintiff hereby re-alleges and incorporates by reference all those allegations contained in paragraphs 1-38 inclusive.

55. Bank of America owed a duty of ordinary care to Katy as an account holder with Bank of America.

56. Bank of America uses the internet as part of its business and encourages its customers to access their accounts via the internet.

57. Bank of America maintains an information technology security apparatus that purports to help maintain the security of its customers' online account access. Bank of America represents to customers that it has this security to protect its customers' accounts.

58. By or on December 9, 2008, Bank of America knew or should have known that an illegal phishing scam was being sent to its customers in Bank of America's name in an attempt to gain access to Bank of America's customer accounts.

59. Upon information and belief, Bank of America failed to notify any of its customers of the phishing scam.

60. Bank of America failed to notify Katy of the phishing scam.

61. When contacted by Katy on December 9, 2008 about the Questionable Emails, Bank of America failed to notify Katy that the Questionable Emails were in fact a phishing scam. This failure was exacerbated by the fact that at that time it was already known that the phishing scam was occurring.

62. At all times relevant herein, Katy acted with due care.

63. At all times relevant herein, Bank of America had the ability to contact its customers, including Katy, by way of e-mail and inform them of the illegal phishing scam which used its logo and was aimed at its customers.

64. Bank of America failed to act in accordance with commercially reasonable standards of fair dealing and ordinary care with regards to its customers. Bank of America should have informed its customers, and specifically Katy, of the phishing scam on December 9, 2008. Additionally, Bank of America should have informed Katy of the phishing scam immediately upon Katy's email inquiring about the Questionable Emails.

65. After being placed on actual notice of the fraudulent transactions, Bank of America failed to act in accordance with commercially reasonable standards of fair dealing and ordinary care specifically with regards with to Katy when it failed to provide Katy with the proper means to delete and reverse the Fraudulent Batches prior to their execution and payment.

66. Furthermore, Bank of America failed to act in accordance with commercially reasonable standards of fair dealing and ordinary care specifically with regards to Katy when it failed to take the immediate steps necessary to abort and delete the Fraudulent Batches despite agreeing to that undertaking.

67. As a result of Bank of America's negligence, Katy and Travelers suffered a financial

loss.

**WHEREFORE**, Plaintiff Travelers, as assignee and subrogee of Katy, prays that this Honorable Court grant judgment against the Defendant on the Counts herein, award Plaintiff damages in an amount to compensate it for all the losses suffered by Katy, with pre-judgment and post judgment interest, costs of court, attorneys' fees, and for such further relief as the Court deems just and proper.

Respectfully submitted,

HENRICHSEN SIEGEL, P.L.L.C.
halbee@hslawyers.com
1648 Osceola St.
Jacksonville, FL 32204
(904) 381-8183 Phone
(904) 381-8191 Facsimile

s/Helen H. Albee
Helen H. Albee

Robert J. Spinazzola
Maisel & Associates
200 N. LaSalle Street
Suite 2000
Chicago, Illinois 60601
Tele: (312)609-2903
Facsimile: (312)917-1427
Rspinazz@travelers.com

Attorneys for Plaintiff Travelers
Casualty and Surety Company of America

## **DEMAND FOR JURY TRIAL**

Plaintiff Travelers Casualty and Surety Company of America seeks a trial by jury on all claims for relief.

                Respectfully submitted,

DATED: October 14, 2009     <u>S/Helen H. Albee</u>
                   Helen H. Albee