UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY | ) | |
| & SURETY COMPANY OF AMERICA, | ) | |
| as assignee and subrogee of Katy | ) | |
| Industries, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:09-cv-6473 |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA'S
OPPOSITION MEMORANDUM TO DEFENDANT BANK OF AMERICA, N.A.'S
MOTION TO DISMISS COUNT IV OF THE AMENDED COMPLAINT**

**COMES NOW**, Plaintiff Travelers Casualty & Surety Company of America, by and

through its undersigned counsel, and files this Opposition Memorandum to Defendant Bank of

America, N.A.'s Motion to Dismiss Count IV of the Amended Complaint (Doc. # 18).  Based on

the record of this case, the law and argument presented below, Plaintiff Travelers Casualty &

Surety Company of America ("Travelers") states that the Motion to Dismiss Count IV of the

Amended Complaint (the "Motion") should be denied and this case proceed on its merits.

## I.     INTRODUCTION

Defendant Bank of America, N.A. asserts that this case simply involves the wrongful

acceptance of payment orders or the failure to cancel such payment orders upon notice that the

payment orders were unauthorized.  Motion at 1.  However, the Motion overlooks other facts

alleged in the Amended Complaint which go beyond the payment orders themselves and

implicate the course of dealing and relationship between Defendant Bank of America, N.A.

("BOA") and Travelers' insured, Katy Industries ("Katy") involving electronic mail communications and the security of said communications. As a result, once these facts are reviewed and taken as true for the purposes of a motion to dismiss, it is clear that the Motion should be denied.

## II.     FACTS ALLEGED IN AMENDED COMPLAINT PERTINENT TO THE MOTION[1]

Travelers is the fidelity insurer of Katy who maintained bank accounts at BOA. Amended Complaint at ¶¶ 5,10. BOA communicates with its customers, including Katy, through electronic mail and encourages its customers to communicate with it through electronic mail ("e-mail"). *Id*. at ¶ 16. BOA assures its customers of security and prompt responses for all e-mails sent by it and received from its customer. *Id*. at ¶ 16, 64. By virtue of its use of e-mails to communicate with its customers, including Katy, BOA and Katy had an implied contract that Katy could rely upon the authenticity of the e-mails it received which purported to be from Bank of America and if the e-mail was unauthorized, Bank of America would inform its customers, including Katy, of the unauthorized e-mail. *Id*. at ¶ 65. Bank of America maintains or should maintain information technology security and risk management procedures to protect its customers from known security breaches involving unauthorized e-mails to customers which appear to be from Bank of America and which attempt to gain customers' confidential account access information. Bank of America represents to customers that it has this security to protect its customers' accounts and communications between Bank of America and its customers. *Id*. at ¶ 66.

---

[1]     Travelers specifically did not incorporate any allegations regarding BOA's wrongful acceptance of the ACH Batches after it had actual notice of their unauthorized nature and its failure to properly cancel or refund the ACH Batches in full into Count IV. *See* Amended Complaint at ¶ 62. Thus, Count IV addresses only the implied contractual obligations between BOA and Katy.

On December 9, 2008, Peggy Foley, one of Katy's senior accountants, received e-mails purporting to be from BOA regarding a new online banking account interface. *Id*. at ¶ ¶ 18-19. Ms. Foley sent the e-mail to BOA's assistant Vice President Kim Wolfe, requesting verification of its authenticity. *Id*. at ¶ 20. Additional employees of Katy received similar e-mails purporting to be from BOA that same day. *Id*. at ¶ 21. BOA knew or should have known that these e-mails purporting to be from BOA were a part of a phishing scheme which masqueraded as a trustworthy entity in order to obtain sensitive and confidential information from customers in order to commit fraud. *Id*. at ¶ 22. However, BOA never informed its customers of this scheme and did not respond to Ms. Foley's December 9, 2008 inquiry regarding the authenticity of the e-mail she and others at Katy had received. *Id*. at ¶ ¶23-24.

On December 10, 2008, Ms. Foley again contacted Ms. Wolfe of BOA regarding the e-mails received the previous day. *Id*. at ¶ 25. Ms. Wolfe only suggested that the e-mail be forwarded to BOA's email fraud department. *Id*. Ms. Foley did as instructed by Ms. Wolfe but still did not receive any response from BOA. *Id*. On December 10, 2008, Katy continued to receive e-mails purporting to be from BOA. *Id*. at ¶ 26.

BOA maintains or should maintain information technology security and risk management procedures to protect its customers from known security breaches involving unauthorized e-mails to customers which appear to be from it and which attempt to gain customers' confidential account access information. *Id*. at ¶ 66. BOA represents to customers that it has this security to protect its customers' accounts and its communications with its customers. *Id*. BOA had the ability to contact its customers, including Katy, by way of e-mail and inform them of the illegal phishing scam which used its logo and was aimed at obtaining its customers' confidential account access information. *Id*. at ¶ 73. The general course of dealings between BOA and Katy

created a commitment on behalf of BOA to inform its customers immediately of known phishing scams represented to be Bank of America emails. *Id.* BOA had an implied contract with Katy that it would inform Katy of such unauthorized emails which bore the Bank of America logo, trademarks and/or service marks, and were known breaches of its security. *Id.* At no time did BOA inform Katy of the phishing scheme or take any action to proactively deal with the effects of the phishing scam. *Id.* at ¶ ¶ 23-24, 70-71.

On December 11, 2008, Ms. Foley received a fax from BOA regarding two ACH batches to be processed out of Katy's BOA account. *Id.* at ¶ 27. Katy knew these ACH batches were fraudulent. *Id.* at ¶ 28. As a result of the fraudulent ACH batches, Katy, and ultimately, Travelers, as subrogee and assignee of Katy, suffered losses in the amount of $235,045.00. Because BOA breached its obligations to institute state of the practice risk management controls and to inform Katy of the phishing scam on December 9, 2008, BOA breached its implied contract with Katy and caused Katy's, and ultimately, Travelers', losses. *Id.* at ¶¶ 75-76.

### III. LEGAL STANDARD

A complaint is required to provide a "short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to provide the defendant with "fair notice" of the claim and its basis. FED.R.CIV.P. Rule 8(2)(a). The United States Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly* did not change this Rule 8 pleading standard. *See* 127 S.Ct. 1955, 1964 (2007), *citing* FED.R.CIV.P. Rule 8(2)(a); *Bissessur v. Indiana University Board of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009). When ruling on a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are construed in the light most favorable to the plaintiff, taking all facts as true, and drawing all inferences in favor of the plaintiff. *Killingsworth v HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The allegations contained in a complaint must

supply sufficient factual allegations "to state a claim for relief that is plausible on its face." *Bell Atlantic*, 127 S.Ct. at 1974. Further, the allegations should be considered as a whole, not in isolation and within the context of the claim asserted. *Hohn v. Maraj*, 2009 WL 5206089, * 1 (D.N.J. 2009), *citing Ashcroft v. Iqbal*, 127 S.Ct. 1937, 1950 (2008). Because the allegations regarding the implied contract between BOA and Katy and BOA's breach thereof do provide fair notice to BOA of the claim for relief, the Motion should be denied.

## IV. LEGAL ARGUMENT

### A. The Breach of Implied Contract Claim is not Displaced by Article 4A.

BOA's first argument for dismissal is that Count IV is displaced by Article 4A of the U.C.C. Motion at 1-2. BOA's argument for displacement should be rejected because BOA overlooks the factual allegations upon which Travelers bases its breach of implied contract claim. As detailed above, the implied contract claim is based on the course of dealings between BOA and Katy related to the security and authenticity of their communications through e-mail and BOA's failure to meet its implied obligations which caused the loss complained of here. *See supra,* § B. These obligations exist wholly outside of the remedial scheme in Article 4A which deals with the rights and obligations concerning funds transfers. *See* 810 Ill. Comp. Stat. Ann. 5/4A-102.

The principles of law and equity **supplement** the U.C.C. as adopted by the Illinois legislature unless specifically displaced. 810 Ill. Comp. Stat. Ann. 5/1-103 (West 2006) (emphasis added). Numerous federal and state cases have held that U.C.C. 4A may appropriately be supplemented by contract and tort law. *See, e.g., Sheerbonnet v. American Express Bank, Ltd.,* 951 F.Supp. 403 (S.D.N.Y. 1996) (common law claims not displaced by Article 4A despite fact claims arise out of funds transfers); *Centre-Point Merchant Bank Ltd. v.*

*Am. Express Bank Ltd.*, 913 F. Supp. 202, 208 (S.D.N.Y. 1996)(situations not covered [by U.C.C. 4A], are not the exclusive province of the Article."); *Hedged Investment Partners v. Norwest Bank Minnesota*, 578 N.W.2d 765*,* 772 (Minn. Ct. App. 1998)(bank's failure to comply with contractual responsibilities is, for the most part, extraneous to the remedial provisions of Article 4A and its liability for breach turns on common law principles of contract and agency law thus, U.C.C. 4A did not preempt common law contract claims).   The Defendant's Motion to Dismiss entirely ignores this reality and the facts upon which Count IV is based. Article 4A does not address the breaches complained of in Count IV of the Amended Complaint and thus does not displace the claim.

The cases cited by BOA are wholly inapposite to Count IV because each of the plaintiffs based their common law claims only on facts concerning the wrongful funds transfers.  *Fitts v. AmSouth Bank*, 917 So.2d 818, 824 (Ala. 2005)(Fittses' common-law claims were based on AmSouth's improper funds transfer and are displaced by Article 4A); *Zengen v. Comerica Bank*, 158 P3d 800, 803 (Cal. 2007)(plaintiff bases common law claims on fact that bank should not have accepted the unauthorized payment orders and thus, claims are displaced); *Covina 2000 Ventures Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 2008 WL 1821738, *3 (S.D.N.Y. 2008)( Plaintiffs' claims derive entirely from allegedly unauthorized wire transfers which are displaced to the extent inconsistent with Article 4A).  Because Count IV stems from facts outside the unauthorized ACH batches alone, BOA's reliance upon these cases is misplaced.  Further, one case relied upon by BOA actually illustrates why there is no Article 4A displacement in the instant matter.

In *Schlegel v. Bank of America, N.A.,* the plaintiff's claims were based on two separate transactions which the bank argued were both displaced by Article 4A.  628 S.E.2d 362, 366-68

(Va. 2006). The first transaction was an alleged unauthorized payment order sent to the bank. *Id*. at 368. Common law claims asserted based on the facts of this transaction were displaced by Article 4A. *Id*. However, the second transaction involved the freezing of funds and common law claims based on those facts were not displaced by Article 4A. *Id*. at 369. The *Schlegel* court found that the second transaction did not fall within the confines of Article 4A and thus, was not displaced. *Id*. Similarly, Count IV in the instant case relies upon facts beyond the improper acceptance of funds transfers at issue in the other Counts of the Amended Complaint. *See supra,* § B. Therefore, the relief sought in Count IV does not fall within the confines of Article 4A. As further evidence of this circumstance, BOA has not directed this Court to any provision of Article 4A which addresses security and authenticity of or risk management practices involving communications between a bank and its customer through e-mail and the internet. Consequently, BOA's displacement argument should be rejected.

### B. An Implied Contract is sufficiently pled.

This case involves an ongoing business relationship between BOA and Katy. It is within this ongoing relationship and course of dealing that an implied contract arose between BOA and Katy related to the security and authenticity of e-mail communications and their obligations when there is a breach of that security. Amended Complaint at ¶¶ 16, 22-25, 65-66, 73-77. Again, as a result of its selective reading of the Amended Complaint, BOA asserts that there are not sufficient facts from which to infer an implied contract claim and cites only two paragraphs of the Amended Complaint. Motion at 4-5. However, there are sufficient facts which if taken as true and construed in the light most favorable to Travelers, establish all the elements of an implied contract the breach thereof. Accordingly, BOA's Motion should to be denied.

A contract implied in fact may be found by examining the acts of the parties "even in the absence of any express statement of specific agreement regarding the details of the contractual relationship." *Siegel v. Shell Oil Co.,* 656 F.Supp.2d 825, 835 (N.D. Ill. 2009). An implied contract is proven by circumstances showing that the parties intended to contract **or** by showing the general course of dealing between the parties. *J.C. Shaeffer Electric, Inc. v. O Frank Heinz Construction Co.*, 300 F. Supp. 396, 399 (S.D. Ill 1969). An agreement may be said to be implied when it is inferred from the acts or conduct of the parties. *Id.* at 399-400. A meeting of minds is not required to be shown by unequivocal acceptance. Id. at 399. Conduct can substitute for the acceptance to meet the requirements of a contract implied in fact. Id. at 400. Moreover, where a court is able to learn "the intent of the parties using the proper rules of construction and principles of equity, then the contract is sufficiently definite and certain to be enforceable." *Brody v Finch University of Health Sciences/The Chicago Medical School*, 298 Ill.App. 3d 146, 154, 698 N.E.2d 257, 265 (1998)(citation omitted.)

BOA cites the *Bissessur* case and asserts that Count IV of the Amended Complaint suffers from the same pleading deficiencies and should be dismissed. Motion at 5. However, the plaintiff in *Bissessur* alleged only 1) that he and the University had an implied contract, 2) the University breached the implied contract and the University's actions were arbitrary and capricious. *Bissessur*, 581 F.3d at 602. These bare allegations are certainly much different from all the allegations which comprise Count IV.

In connection with Count IV, Travelers alleges, among other things, the following:

- BOA uses and encourages the use by its customers of email as a means of communication. Bank of America assures the security of its emails sent and received  and also assures its customers of prompt responses to email communication; Amended Complaint at ¶ 16, 64
- BOA knew or should have know about the phishing scam targeting its customers; *id.* at ¶ 22;

- Katy was told by BOA to send the suspicious e-mail to its e-mail fraud department; *Id*. at ¶ 25;
- BOA never informed its customers, in particular, Katy, despite its direct inquiries about the fraudulent nature of the suspicious e-mails; *id*. at ¶ 23, 24;
- By virtue of its use of e-mails to communicate with its customers, including Katy, BOA and Katy had an implied contract that Katy could rely upon the authenticity of the e-mails it received which purported to be from BOA and if the e-mail was unauthorized, BOA would inform its customers, including Katy, of the unauthorized e-mail; *id*. at ¶ 65;
- BOA maintains or should maintain information technology security and risk management procedures to protect its customers from known security breaches involving unauthorized e-mails to customers which appear to be from BOA and which attempt to gain customers' confidential account access information. BOA represents to customers that it has this security to protect its customers' accounts and communications between BOA and its customers; *id*. at ¶ 66;
- The general course of dealings between BOA and Katy created a commitment on behalf of BOA to inform its customers immediately of known phishing scams represented to be BOA emails. BOA had an implied contract with Katy that it would inform Katy of such unauthorized emails which bore the BOA logo, trademarks and/or service marks, and were known breaches of its security; *id*. at ¶ 73;
- BOA had an implied contract with Katy that it would institute state of the practice risk management controls which would have enabled BOA to alert Katy and other BOA customers of the fraud before any losses were incurred; *id*. at ¶ 74
- BOA breached its implied contract with Katy, leading to the loss at issue. *id*. at ¶ 75-77.

From these allegations, when taken as true, it can be inferred that BOA offered secure e-mails as a method for its customers to communicate with it regarding banking services and their accounts. As part of this method of communication, the security and authenticity of these communications was assured by BOA and that if there was a breach of that security or an e-mail was not authentic, BOA would immediately inform its customers and in particular Katy. Katy accepted this offer and used e-mails to communicate with BOA regarding its accounts. After receiving e-mails purported to be from BOA, Katy made direct inquiries to BOA regarding the authenticity of these suspicious e-mails from BOA. BOA referred Katy to its e-mail fraud department which must exist for some purpose involving e-mail fraud. Certainly this conduct on the part of BOA and Katy gives rise to an implied in fact contract regarding the security and

authenticity of e-mail communications and a party's obligations upon a breach of that security in any way.

Despite Katy's direct inquiries of BOA, BOA failed to respond in any meaningful way regarding the fraudulent nature of the suspicious e-mails and failed to have in place state of the practice risk management practices, as it has assured Katy it would, which would have avoided the loss. These allegations must be taken as true and certainly provide enough notice to BOA as to the terms of the implied contract. *See Killingsworth,* 507 F.3d at 618.

At this stage of pleading, the Amended Complaint is evaluated for fair notice of the claim asserted against BOA and upon what that claim is based. *See Bell Atlantic*, 127 S. Ct. at 1964. Because, unlike the plaintiff in *Bissessur*, Travelers has provided sufficient facts from which to infer the elements of an implied contract and the breach thereof, BOA's attempt to cast the instant case in the same light as the *Bissessur* complaint should be rejected. Once all the allegations of the Amended Complaint related to Count IV are considered and construed in the light most favorable to Travelers, BOA has more than fair notice of what the terms of the implied contract are and how it has breached the implied contract. As a result, its Motion should be denied.

In the other case cited by BOA on this issue, the plaintiff's allegations related to his implied contract claim in *Siegel v. Shell Oil* are again much different from the allegations pertinent to Count IV. In *Seigel*, the plaintiff brought claims against certain oil companies, alleging he purchased their brand of gasoline and since the defendants artificially inflated the price, he was damaged. 656 F.Supp.2d at 831. Specifically regarding the implied in fact contract claim, he argued only that he "purchased gasoline from Defendants at the price stated on the gasoline pump and that this conduct forms the terms of a contract implied-in-fact." *Id*. at

835. In reviewing the defendants' motion for summary judgment, the *Siegel* Court found these allegations insufficient factually and legally to state a claim based on an implied contract. *Id*. As demonstrated above, unlike the allegations and argument in *Siegel*, the allegations pertinent to Count IV of the Amended Complaint are factually and legally sufficient, in particular at this stage of the case, to provide BOA with notice of the claim asserted against it. Consequently, the Motion should be denied.

## V. CONCLUSION

Defendant Bank of America, N.A. has failed to meet its heavy burden of showing that the Count IV of the Amended Complaint fails to state a claim upon which relief may be granted. By ignoring the pertinent allegations of Count IV of the Amended Complaint, Defendant Bank of America, N.A. misapplies the law concerning when the U.C.C. displaces common law claims and the law concerning implied in fact contracts. For these reasons and as demonstrated above, Defendant Bank of America, N.A.'s arguments should be rejected and its Motion to Dismiss Count IV of the Amended Complaint should be denied.

Respectfully submitted,

HENRICHSEN SIEGEL, P.L.L.C.
halbee@hslawyers.com
1648 Osceola St.
Jacksonville, FL 32204
(904) 381-8183 Phone
(904) 381-8191 Facsimile

s/Helen H. Albee
Helen H. Albee

Robert J. Spinazzola
Maisel & Associates
200 N. LaSalle Street
Suite 2000
Chicago, Illinois 60601
Tele: (312)609-2903
Facsimile: (312)917-1427
Rspinazz@travelers.com
Attorneys for Plaintiff Travelers
Casualty and Surety Company of America

## CERTIFICATE OF SERVICE

     I hereby certify that on this 8th day of February, 2010, I presented the foregoing Opposition Memorandum to Defendant's Motion to Dismiss Count IV of the Amended Complaint to the Clerk of the Court for filing and uploading to the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

Lawrence M. Benjamin, Esquire
Neal ▪ Gerber ▪ Eisenberg LLP
2 N. LaSalle ▪ Suite 2300
Chicago, Illinois 60602
Attorney for Defendant Bank of America, N.A.

                                     s/Helen H. Albee